## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | CRIMINAL NO.  22-CR-00308 (DLF) |
| | : | |
| v. | : | |
| | : | |
| VINCENT GALARZA, | : | |
| Defendant. | : | |

### STATEMENT OF OFFENSE

The parties in this case, the United States of America and the defendant, Vincent Galarza, stipulate and agree that the following facts are true and accurate.  These facts do not constitute all of the facts known to the parties concerning the charged offense; they are being submitted to demonstrate that sufficient facts exist that the defendant committed the offenses to which he is pleading guilty:  Conspiracy to Distribute Child Pornography, in violation of 18 U.S.C. Sections 2252(a)(2) and (b)(1), and Sexual Exploitation of Children, in violation of 18 U.S.C. Section 2251(a).

### STATEMENT OF FACTS

The Tor Network

Tor is a computer network which anonymizes Internet activity by routing a user's communications through a global network of relay computers (or proxies), thus effectively masking the internet-protocol ("IP") address of the user.  An "IP address" is a unique numeric address (used by computers on the internet) that is assigned to properly direct internet traffic. A publically visible IP address can allow for the identification of the user and his/her location.

To access the Tor network, a user has to install freely available Tor software, which relays only the IP address of the last relay computer (the "exit node"), as opposed to the user's actual IP

address. There is no practical method to trace a user's actual IP address back through those Tor relay computers.

The Tor network makes it possible for a user to operate a special type of website, called "hidden services," which uses a web address that is comprised of a series of 16 algorithm-generated characters (such as "asdlk8fs9dflku7f") followed by the suffix ".onion." Websites, including hidden services, have system administrator(s) (also called the "admin(s)") who are responsible for overseeing and operating these websites.

Bitcoin

Bitcoin ("BTC") is one type of virtual currency that is circulated over the Internet. BTC is not issued by any government, bank, or company but rather is controlled through computer software. Generally, BTC is sent and received using a BTC "address," which is like a bank account number and is represented by a case-sensitive string of numbers and letters. Each BTC address is controlled through the use of a unique private key, a cryptographic equivalent of a password. Users can operate multiple BTC addresses at any given time, with the possibility of using a unique BTC address for every transaction.

BTC fluctuates in value. Around March 5, 2018, one BTC was worth approximately $11,573.00. A typical user purchases BTC from a BTC virtual-currency exchange, which is a business that allows customers to trade virtual currencies for conventional money (*e.g.*, U.S. dollars, euros, etc.). Little to no personally identifiable information about the sender or recipient is transmitted in a BTC transaction itself. However, virtual currency exchanges are required by U.S. law to collect identifying information of their customers and verify their clients' identities.

To send BTC to another address, the sender transmits a transaction announcement, cryptographically signed with the sender's private key, across the BTC network. Once the sender's

transaction announcement is verified, the transaction is added to the blockchain. The blockchain is a decentralized, public ledger that logs every BTC transaction. In some instances, blockchain analysis can reveal whether multiple BTC addresses are controlled by the same individual or entity. For example, analyzing the data underlying BTC transactions allowed for the creation of large databases that grouped BTC transactions into "clusters." This analysis allowed for the identification of BTC addresses that were involved in transacting with the same addresses.

## THE WEBSITE

"The Website" was a website dedicated to the advertisement and distribution of child pornography that operated as a hidden service on the Tor network until March of 2018 when it was seized by law enforcement. The Website was used to host and distribute video files depicting child pornography that could be downloaded by site users. The Website was not intended to be used to upload pornography of adults, as evidenced on the upload page on The Website which clearly stated: "Do not upload adult porn." The Website server had over 250,000 unique video files, which totaled approximately eight terabytes of data.

Any user could create a free account on The Website by creating a username and password. Only after the user registered an account could the user browse previews of videos available for download and post text to The Website. To download videos from the site, users used "points," which were allocated to users by The Website. A registered user could earn points from The Website in several ways: (1) uploading videos depicting child pornography; (2) referring new users to The Website; (3) paying for a "VIP" account, which lasted for six months, entitled a user to unlimited downloads, and was priced at 0.03 BTC (approximately $327.60 as of March 1, 2018); or (4) paying for points incrementally (*i.e.*, .02 BTC for 230 points). Points were not transferable to any other website or application. Once a customer sent BTC to The Website, the BTC could not

3

be refunded or redirected. The points obtained by the payment of BTC could only be used for downloading videos.

Certain persons joined the conspiracy to distribute child pornography by uploading videos to The Website. Those co-conspirators who uploaded videos of child pornography to The Website for "points" also earned additional "points" each time a customer of the site downloaded that particular video from The Website. Thus, the co-conspirators had a shared goal as part of the conspiracy – increasing the number of unique videos on The Website to drive additional traffic to it, which in turn led to greater downloads and more points for the co-conspirators. When uploading videos, the co-conspirators would use explicit file names highlighting the content as showing the sexual exploitation of minors and would add tags that customers could search for, such as PTHC, 2yo, etc. In order to prevent duplicate videos from being uploaded, The Website operated a digital hash-value check of videos the co-conspirators uploaded in order to compare the video to other videos previously uploaded to the site. The Website did not allow a co-conspirator to upload a video whose hash value matched something previously uploaded to the site.

During the course of the investigation, law enforcement agents in Washington, D.C. accessed The Website on multiple occasions, including on or about September 28, 2017, February 8, 2018, and February 22, 2018, observed its functionality by browsing the listings on The Website, and conducted undercover purchases by downloading child pornography video files from The Website. These downloaded child pornography video files included pre-pubescent children, infants, and toddlers engaged in sexually explicit conduct. Each video available for download from The Website had a title, a description (if added by the co-conspirator), "tags" with further descriptions of the video enabling a user to more easily locate a particular category of video using

The Website's search function, and a preview thumbnail image that contained approximately sixteen unique still images from the video.

On or about March 5, 2018, South Korean law enforcement executed a search warrant at the residence of the administrator of The Website in South Korea. Pursuant to the search, South Korean law enforcement seized The Website's server and associated electronic storage media. South Korean law enforcement then provided to U.S. law enforcement a forensic image of the server. U.S. law enforcement subsequently obtained a federal search warrant to review this forensic image.

## IDENTIFICATION OF CO-CONSPIRATOR GALARZA

A review of the forensic image of the server revealed BTC transfers on December 17, 2016 from a BTC address to The Website's BTC address starting with 1Hrb. Subpoena returns from a virtual-currency exchange in the United States ("BTC Exchange") revealed that the source of this BTC transfers was from a BTC Exchange Account number starting with 5855 ("Subject BTC Exchange Account").[1]

---

[1] On December 17, 2016, the Subject Exchange Account sent approximately 0.1025 BTC and 0.005 BTC (worth about $80.97 and $3.95 respectively at the time of transactions) to a BTC mixer. A BTC mixer is a paid service that attempts to obfuscate the trail of BTC by mixing multiple clients' transactions together so that there is not a direct trail from the BTC sender to the recipient. On December 17, 2016, The Website BTC address starting in 1Hrb also received approximately 0.09882853 BTC from a mixer, an amount reduced from the amounts the Subject Exchange Account sent due to BTC transactional fees and the mixer's fees. The defendant was attempting to purchase a VIP account at The Website; however, he did not account for those BTC transactional fees and the mixer's fees. Thus, he had to send an additional 0.00228809 BTC (worth about $1.80 at the time of transaction) from the Subject Exchange Account to The Website. He did not use a mixer with his third transaction to The Website.

Subpoena returns from the BTC Exchange revealed that the Subject BTC Exchange Account (which sent BTC to The Website) was created on or about December 17, 2016 with the following know-your-customer data:

- registered in the name of the defendant;
- listed the defendant's date of birth and his address in Glendale, New York; and
- listed the defendant's phone number; and an email address hosted by Oath ("Subject Email Address").

As part of the BTC Exchange's legally required customer due diligence rules, the BTC Exchange confirmed the Subject Email Address and phone number by sending messages to which the user had to reply. Subpoena returns from Oath revealed that the Subject Email Address was created on December 15, 2002 and was registered in the name of defendant with same phone number that he provided when creating the Subject BTC Exchange Account.

The Subject BTC Exchange Account was funded by a Cross County Savings Bank ("CCSB") checking account ending in 0160 and a Chase Bank credit card ending in 8140. Subpoena returns revealed that both of these accounts were listed in the defendant's name. The defendant provided the same date of birth, phone number, and address when he opened these account. The defendant also provided copies of his driver's license and Social Security card when he opened his account with CCSB. Subsequent law enforcement investigation identified CCSB ATM security footage from December 26, 2017, which depicted an individual resembling the defendant's driver's license photograph accessing a CCSB ATM.

## DEFENDANT'S ACTIVITY ON THE WEBSITE

Law enforcement's review of the forensic image of the server revealed that The Website created the unique BTC address starting with 1Hrb for the defendant's account, thisthishold, which was funded by the Subject Exchange Account. The server data revealed that between approximately May 31, 2017 and February 9, 2018, the defendant downloaded approximately 174 videos from The

6

Website with video file names and descriptions indicative of child pornography. Additionally, from approximately June 25, 2016 to December 21, 2016, the defendant uploaded approximately 560 videos to The Website—all of which are videos that appear to depict child pornography.

For example, video file EA - N2016H-034.mp4 with file description "EA - N2016H-part" was uploaded to The Website by the defendant on November 20, 2016. The video is 19 seconds long and depicts a female child, approximately five to seven years old, nude from the waist up. The child appears to be laying on her back while an adult male stands over her and masturbates his penis near her mouth until he ejaculates on her face. The video ends with a collage of photographs of the same child with semen on her face. Users of The Website downloaded this video approximately two times.

Another video, entitled 20150805201415-031.mp4 with the file description "20150805201415-part" was uploaded to The Website by the defendant on December 20, 2016. The video is 24 seconds long and depicts a female child, approximately five to seven years old, nude from the waist down. The child appears to be laying on her back, viewing a computer tablet, while a male adult inserts the head of his penis into the child's vagina. Users of The Website downloaded this video approximately three times.

## DEFENDANT'S ARREST

At the time of the defendant's arrest in New York, law enforcement executed a residential search warrant and seized several of the defendant's electronic devices, to include a self-built computer with a Redundant Array of Independent Disks ("RAID") configuration. RAID is a sophisticated way to pair multiple drives together to improve both performance and redundancy. Due to the complex nature of the defendant's electronic configurations, it took law enforcement considerable time to forensically extract and review the approximately 1.7 million images and

videos recovered from the device.   However, once law enforcement was able to override the defendant's password and extract the data, a review of the self-built computer, under the username "Vincent John Galarza," identified over 500 images and 102 videos of child pornography, the majority of which depicted sexually explicit conduct of pre-pubescent children.   At least three of these videos are consistent with videos that the defendant uploaded and downloaded to The Website.

## DEFENDANT'S PRODUCTION OF CHILD PORNOGRAPHY

The comprehensive electronic forensic review also identified twenty videos of a minor girl between the ages of 14 and 15 years old (CW1).   CW1 has been identified as the defendant's then-girlfriend's younger sister. The defendant surreptitiously recorded the videos from two cameras between March 13, 2014 and June 2, 2015.

The defendant installed the first camera in CW1's bathroom. In one of the videos, his face is observed as he covertly sets up the camera. In another video, the defendant examines the angle of the camera before exiting the bathroom. This camera subsequently captured CW1 undressing and using the shower. The defendant captured at least twenty videos, which were then edited and clipped to produce over 966 still-shot images that focused on the same minor's genitalia and pubic area.

On April 19, 2019, law enforcement interviewed W-1, a family member of CW1. W-1 confirmed the identity and age of CW1. W-1 confirmed that the location of the recordings was in CW1's bathroom in her home in New York. W-1 further informed law enforcement that the defendant assisted W-1's family with updates to all of their electronic devices because he was computer-savvy. According to W-1, CW1 had a web-camera that had been set up on her computer in CW1's bedroom. CW1 would often complain that the web-camera would switch on and off

automatically when CW1 was in the room. Law enforcement identified numerous still images on the defendant's electronic device that appear to have been captured from CW1's web camera. These depictions show CW1 in various stages of undress with her breasts exposed in her bedroom.

On April 29, 2019, law enforcement interviewed CW1. CW1 identified herself as the individual depicted in the surreptitious bathroom recordings and web-camera footage. CW1 identified that these recordings and images were taken of CW1 in the privacy of her bedroom and bathroom in New York. CW1 also disclosed to law enforcement that when she was 12 years old (and the defendant was in his early to mid-20s), she began to lock her bedroom door whenever the defendant would stay at the home with W-1. CW1 also stated that starting when she was in 5th grade (and approximately 11 years old) through her freshman year of high school, the defendant would walk by her and touch her on her buttocks over her clothing.

## DEFENDANT'S SEXTORTION OF CW1

During the forensic review on the defendant's electronic devices, law enforcement identified a photograph of CW1 in her bedroom with her breasts exposed. Written on this image were words to the effect of "show me more vids or I'll show everyone."

On April 29, 2019, CW1 identified herself in this image and opined that it had been taken, unbeknown to her, with her web-camera device that had been attached to her desktop computer. CW1 reported to law enforcement that at a time unknown to CW1, her desktop was remote accessed and an image of CW1 with her breasts visible appeared on her computer's screen. CW1 reported that the image on the defendant's computer appeared to be the same image that was on her hacked computer. CW1 explained that accompanying the image were typed words demanding that CW1 send more images or videos or else the photograph of her breasts would

be distributed to others. Thereafter, CW1 immediately dismantled her web camera and got a new computer.

At the time, CW1 did not know who had hacked her web camera and remote accessed her desktop. The forensic review of the defendant's devices revealed that the defendant both illegally commandeered CW1's web camera by hacking her computer, and then sent her a threatening sextortion message.

## **CONCLUSION**

The defendant did knowingly and intentionally use CW1 to surreptitiously produce twenty videos and over 966 images that contained sexually explicit conduct of the minor child CW1. These visual depictions were produced using materials that had been mailed, shipped, or transported in or affecting interstate or foreign commerce by any means, including by computer. Additionally, the defendant engaged in a pattern of activity involving prohibited sexual conduct that was directed at CW1.

Additionally, the defendant conspired with the administrator of The Website, co-conspirator Jong Woo Son, to upload child pornography videos files to The Website for dissemination to The Website's vast customers. The co-conspirators entered into this agreement to benefit, among others:

a.      co-conspirator Jong Woo Son, who obtained illicit income as co-conspirators uploaded more video files to The Website, which other customers then paid to access; and

b.      the defendant, who derived points from uploading videos and further points from the uploads when users of The Website downloaded his videos, and these points could then be redeemed to download new video files from The Website.

Here, the defendant knowingly distributed 560 videos of child pornography.  These visual depictions of child pornography were shipped and transported in interstate and foreign commerce and using a means and facility of interstate and foreign commerce, including by computer, and/or were produced using materials that had been shipped and transported in and affecting interstate and foreign commerce, including by computer.  The production of these visual depictions involved the use of one or more minors engaging in sexually explicit conduct.  The visual depictions of child pornography were of one or more children under the age of eighteen (18) years engaging in such sexually explicit conduct.  Specifically:

- One or more images and videos of child pornography possessed by the defendant involved a "prepubescent minor…who had not attained 12 years of age."  See U.S.S.G. 2G2.2(b)(2).

- The videos the defendant uploaded to The Website were distributed for the "receipt of a thing of value, but not for pecuniary gain," see U.S.S.G. 2G2.2(b)(3)(B), to wit: the defendant received points that he could only redeem on The Website for downloading additional videos depicting child pornography;

- In total the defendant distributed 560 videos depicting child pornography. Accordingly, the offense involved "600 or more images."  See U.S.S.G. 2G2.2(b)(7)(D); see also Application Note 4(B)(ii) ("each video…shall be considered to have 75 images.")

Respectfully submitted,

MATTHEW M GRAVES
UNITED STATES ATTORNEY

__/s/ Lindsay Suttenberg _____
Lindsay Suttenberg
Assistant United States Attorneys

## DEFENDANT'S ACKNOWLEDGMENT

I have read every page of this Statement of the Offense and have discussed it with my attorney. I fully understand this Statement of the Offense. I agree and acknowledge by my signature that this Statement of the Offense is true and accurate. I do this voluntarily and of my own free will. No threats have been made to me nor am I under the influence of anything that could impede my ability to understand this Statement of the Offense fully.

Date: 1/17/23

Vincent Galarza
Defendant

## ATTORNEY'S ACKNOWLEDGMENT

I have read every page of this Statement of the Offense, and have reviewed it with my client fully. I concur in my client's desire to adopt this Statement of the Offense as true and accurate.

Date: 1/17/23

David Benowitz
Defense Counsel

12